JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER W. BOSH,<br><br>                     Plaintiff,<br><br>        v.<br><br>SHED MEDIA US INC., et al.,<br><br>                     Defendants. | Case No. CV 11-03782 DMG (PJWx)<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court on Defendant Allison M. Mathis' Motion to Dismiss. For the reasons set forth below, Defendant's Motion is GRANTED.

## I.
## PROCEDURAL HISTORY

On May 2, 2011, Plaintiff Christopher W. Bosh ("Bosh") filed this action against Defendants Shed Media US Inc. ("Shed Media") and Allison M. Mathis ("Mathis"). Pursuant to a settlement agreement, Bosh stipulated to dismiss Shed Media with prejudice on May 24, 2011 [Doc. # 7]. On June 20, 2011, Mathis filed a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 18]. Bosh filed his Opposition on July 11, 2011 [Doc. # 27]. On July 25, 2011, Mathis filed her Reply [Doc. # 29]. The Court took this matter under submission on August 4, 2011 [Doc. # 31].

## II.
## FACTUAL BACKGROUND

Bosh is a professional basketball player for the Miami Heat. (Compl. ¶ 10.) He maintains a residence in Texas (*id*. ¶ 2) and Florida (Mathis Decl. ¶ 14). Bosh and Mathis lived together in Texas during which time Mathis became pregnant with his child. (Compl. ¶¶ 11-12; Mathis Decl. ¶ 3.) According to Mathis, Bosh "suddenly and without explanation abandoned [her] when [she] was seven months pregnant, without money or transportation and with no way to provide for [her]self." (Mathis Decl. ¶ 4.) Due to her "deteriorating medical condition," Mathis left to live with her mother in Maryland, where she gave birth. (*Id*. ¶ 5.) Subsequently, Mathis relocated to Florida, where she has lived at all times relevant to this lawsuit. (*Id*. ¶ 6.)

Shed Media produces the reality television series "Basketball Wives," which features women who are currently dating, formerly dated, or were married to NBA basketball players. (Compl. ¶ 14; Mathis Decl. ¶ 7.) It hired Mathis to appear on the program. (Compl. ¶ 13; Mathis Decl. ¶ 7.) Mathis reported for filming in Florida and received payments there for her appearances. (Mathis Decl. ¶ 8.)

Bosh then filed the instant lawsuit, alleging eleven causes of action under the Lanham Act, 15 U.S.C. § 1125, and related tort claims under California statutory and common law. After Bosh filed this lawsuit, Shed Media did not call Mathis back to the filming location. (Mathis Decl. ¶ 10.) Mathis is currently unemployed and without any income. (*Id*. ¶¶ 12, 15.)

## III.
## LEGAL STANDARD

Consistent with due process, a court may exercise personal jurisdiction over a defendant "only if he or she has 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (*en banc*) (quoting *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The plaintiff bears the burden of showing that jurisdiction is appropriate. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). Where, as here, no federal statute governs personal jurisdiction, a district court applies the law of the state in which the court sits. *See* Fed. R. Civ. P. 4(k)(1); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because California's long-arm jurisdictional statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, the jurisdictional analysis under either federal or state law is the same. *CollegeSource, Inc. v. AcademyOne, Inc.*, __ F.3d __, 2011 WL 3437040, at *4 (9th Cir. Aug. 8, 2011) (citing *Schwarzenegger*, 374 F.3d at 800-01).

Courts follow a three-part test to determine whether they may appropriately exercise specific jurisdiction over a nonresident defendant: (1) the defendant must (a) "purposefully direct his activities or consummate some transaction with the forum or resident thereof"; or (b) "perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *CollegeSource*, 2011 WL 3437040, at *6 (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of establishing the first two prongs. If the plaintiff meets this burden, the defendant must "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

## IV.

## DISCUSSION

The first prong of the test for specific personal jurisdiction refers to both "purposeful availment" and "purposeful direction." In general, personal jurisdiction should be analyzed under the "purposeful availment" standard. *J. McIntyre Machinery,*

*Ltd. v. Nicastro*, __ U.S. __, 131 S.Ct. 2780, 2785 (2011) (plurality opinion). An important exception, applicable here, is that intentional tort claims, including claims under the Lanham Act, are almost always analyzed under the rubric of "purposeful direction" using the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, __ F.3d __, 2011 WL 3437047, at *7-8 (9th Cir. Aug. 8, 2011) (distinguishing *J. McIntyre Machinery*); *CollegeSource*, 2011 WL 3437040, at *7 (same); *see also J. McIntyre Machinery*, 131 S.Ct. at 2785 (acknowledging that exceptions to the general rule may exist in intentional tort cases).

Inexplicably, Bosh relies only upon the "purposeful availment" test. (Opp'n at 5.) "A purposeful availment analysis is most often used in suits sounding in contract." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 802). The claims at issue here, however, sound in tort. *Calder*, which originated the "effects" test, itself involved Florida-based defendants who were sued in California based on content that they provided to a nationally distributed publication. Therefore, the *Calder* effects test is appropriate here to evaluate purposeful direction.[1]

---

[1] Even if the Court were to apply the purposeful availment test, it would not aid Bosh's cause. The only contractual basis for jurisdiction in the Central District of California is the contract between Mathis and Shed Media, a Los Angeles-based company (incorporated in Delaware). (Compl. ¶ 3.) An individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (citing *Burger King*, 471 U.S. at 478).

The forum selection clause in Mathis' contract with Shed Media (Amato Decl., Ex. A, Attachment) was plainly for the benefit of Shed Media, not Mathis. The clause is nestled among other boilerplate benefitting Shed Media in a contract of adhesion. (*Id*. at 16.) Mathis has no connection to California, lives on the opposite side of the country, and cannot afford counsel here (she is being represented on a *pro bono* basis). (Mathis Decl. ¶¶ 6, 12-13, 15-20; Doyle Decl. ¶ 2.) The forum selection clause thus worked to her detriment. She did not purposefully avail herself of the privilege of doing business in California in any way relevant to this lawsuit.

### A. Purposeful Direction

Under the "purposeful direction" or "effects" test, a defendant has the requisite minimum contacts when "(1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state." *Love*, 611 F.3d at 609 (citing *Yahoo!*, 433 F.3d. at 1206).

#### 1. Intentional Act

Bosh alleges that Mathis "is attempting to promote her own commercial brand and become a television personality and/or celebrity by exploiting (a) her former relationship with [him], (b) the fact that [Bosh] is the father of the Minor Child, [and] (c) [Bosh's] name and/or likeness[,] for commercial gain." (Compl. ¶ 16.) These alleged acts, *i.e.*, Mathis discussing Bosh, their relationship, and their child, occurred when she filmed "Basketball Wives" in Florida.

#### 2. Express Aiming

The "express aiming" requirement is met by allegations that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *CollegeSource*, 2011 WL 3437040, at *8 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Bosh is not a resident of California and appears to have even less of a connection to the forum than does Mathis. Thus, Mathis did not expressly aim her conduct at a California resident.

#### 3. Foreseeable Effects

Although "the 'brunt' of the harm need not be suffered in the forum state," a "jurisdictionally sufficient amount of harm" must be suffered there. *Yahoo!*, 433 F.3d at 1207. Here, no harm was suffered in California.

In sum, Mathis did not expressly aim her conduct at California and it did not have foreseeable effects on Bosh here. Consequently, Bosh fails to show purposeful direction that would allow this Court to exercise personal jurisdiction over Mathis.

1  **B.     Bosh's Remaining Contentions**

2       Bosh maintains that Mathis consented to this Court's jurisdiction in the forum selection clause and that he, a non-party, can enforce it because his claims arise out of Mathis and Shed Media's contractual relationship.[2]  (Opp'n at 11-13.)   Bosh relies on *Holland America Line Inc. v. Wärtsilä North America, Inc.*, 485 F.3d 450 (9th Cir. 2007). In *Holland America*, the Ninth Circuit explained that "where the alleged conduct of the nonparties is closely related to the contractual relationship, 'a range of transaction participants, parties and non-parties, should *benefit from and be subject to* forum selection clauses.'"  *Id*. at 456 (emphasis added) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)).

       Bosh's reliance on *Holland America* is misplaced.  *Holland America* enforced a forum selection clause against nonparty subsidiaries of a corporate signatory to the contract.  In stressing the reciprocal benefits and obligations that a forum selection clause places on a nonparty subject to it, *Holland America* is consistent with general contractual principles that an agreement can only be enforced by a signatory or third party beneficiary.  "A nonparty becomes legally entitled to a benefit promised in a contract . . . only if the contracting parties so intend."  *Astra USA, Inc. v. Santa Clara County, Cal.*,

---

[2] Bosh relies on a copy of the contract attached to Mathis' complaint against him in a Florida state court proceeding, *Mathis v. Bosh*, No. 2011-CA-7139 (Fla. Cir. Ct. filed June 13, 2011).  (Amato Decl., Ex. A.)  Mathis asserts that this evidence is inadmissible [Doc. # 28].  Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).  Nonetheless, "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it."  *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983).  Mathis does not contest the authenticity of the copy of the contract—only its authentication.  Given that Mathis herself submitted this copy of the contract to a court of law, it bears sufficient "guarantees of trustworthiness" that its consideration will serve the interests of justice.  Fed. R. Evid. 807; *see Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003) ("Even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic.").

__ U.S. __, 131 S.Ct. 1342, 1347, 179 L.Ed.2d 457 (2011) (citation omitted).  The contracting parties here had no relationship whatsoever with Bosh and no intent that he would benefit from their agreement.  Therefore, Bosh cannot enforce it.

Bosh further speculates that Shed Media may have been able to compel Mathis to appear in this lawsuit had it filed any cross-claims against her.  (Opp'n at 14.)  Whatever the truth of this supposition, Shed Media is no longer a party to this litigation and there is no basis to support the exercise of personal jurisdiction over Mathis.

Finally, Bosh requests an opportunity to conduct jurisdictional discovery in lieu of outright dismissal.  (Opp'n at 18-19.)  His assertion that Mathis "is an aspiring actress . . . who has mastered a Californian accent" (*id.*) is not a colorable showing that personal jurisdiction may exist over her.  Rather, it amounts to "little more than a hunch that [discovery] might yield jurisdictionally relevant facts."  *Boschetto*, 539 F.3d at 1020 (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).  As such, it does not warrant the burden, expense, and delay that discovery would entail.

## V.
## CONCLUSION

In light of the foregoing, Defendant Mathis' Motion to Dismiss is **GRANTED** and this action is hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

DATED:     August 16, 2011

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE